# UNITED STATES OF AMERICA
# FEDERAL DISTRICT COURT
# OF MASSACHUSETTS

| | |
|---|---|
| Gloria Artis, | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| Cape Cod Hospital, | ) |
| Defendant, and James Happel | ) |
| | ) |

## Complaint and Charge of Discrimination from the Complainant

### Introduction

The Plaintiff, Gloria Artis, suffered pervasive and prolonged discriminatory treatment by Defendant Cape Cod Hospital ("CCH"). Mrs. Artis is a member of a protected class being black and of African descent, and based on sex, gender, and retaliation. After filing a Complaint with the Massachusetts Commission Against Discrimination, CCH retaliated against Mrs. Artis by making racially insensitive remarks, trying to force employees to write grievances against Mrs. Artis, and generally being non-responsive to Mrs. Artis' complaints of racism, which has resulted in an unprofessional and hostile working environment for Mrs. Artis.

### Jurisdiction

Jurisdiction is invoked in this Court pursuant to 28 U.S.C. 1331 because these claims are brought to assert federal rights. Specifically, the plaintiff asserts claims under the Civil Rights Act of 1964 42 U.S.C. §2000 et seq. (as amended 1972) ("Title VII"). This Court also has pendant jurisdiction over state law claims for discrimination based on gender and age pursuant to Massachusetts General Laws c. 151B.

## Venue

Venue is proper in this court because all of the acts or occurrences giving rise to the cause of action occurred in the city of Boston, County of Suffolk, which is located in the eastern district of Massachusetts.

## Parties

1. Gloria Artis is an individual residing at 48 Timberline Rd., Millis, MA 02054-1149.
2. Cape Cod Hospital is a business 27 Park St, Hyannis, MA 02601.
3. James Happel is an employee of Cape Cod Hospital located at 27 Park St, Hyannis, MA 02601.

## Facts

1. Mrs. Artis began her employment as a Supervisor of Phlebotomy with CCH on October 3, 2016, and Mrs. Artis remains employed at CCH.
2. James Happel ("Mr. Happel") is the Director of Labs at CCH.
3. On or about March 13, 2017 Mrs. Artis received an adverse employment action by James Happel and given in hand by Jennifer Clark, lab manager. Clark and Happel told a CCH employee to go to HR and state that she felt threatened by Mrs. Artis.
4. Happel and Clark then filed a Complaint against Mrs. Artis alleging she did not send a letter to employees to offer stress testing, and that she made an employee feel threatened, all of which was fabricated.
5. Happel imposed a written warning on Mrs. Artis for not following protocol and providing written notice to staff, but Artis did follow the protocol properly and met the objective.

6. A week later the employee informed Mrs. Artis that she felt bad that she went to HR, and felt pushed by management to put in a false complaint against Mrs. Artis.

7. Mrs. Artis verbally objected to this discipline, naming Happel and Jennifer Clark as the source of the adverse employment action. Happel did not treat non- African-American employees in this manner.

8. On April 3, 2017 Happel called Mrs. Artis to a private meeting in his office, and said to Mrs. Artis, "You Blacks! Your relationship is inappropriate with Hilda Hayes (also African-American)." Mrs. Artis responded by saying that sounds very racist and asked him to stop.

9. Happel expressed his concerns to Mrs. Artis that she would inappropriately favor Hayes, who is under Mrs. Artis' supervision.

10. On May 5, 2017 Mrs. Artis reported Happel's racial remarks to Sarah O'Reily, HR Manager.

11. On June 8, 2017, Happel said to Mrs. Artis prior to the Muse presentation, "all babies look like Winston Churchill." Mrs. Artis was the only Black employee in attendance in the Muse meeting, and felt singled out, harassed, and discriminated against.

12. On June 9, 2017, Mrs. Artis was singled out of all supervisors and asked to do a predictive index, when the results returned positive, Happel scurried to have all other supervisors take the predictive index.

13. Sarah O'Reily, HR Manager did not confirm with Mrs. Artis that an investigation into Happel's racial discrimination would be performed by CCH.

14. On July 12, 2017 Artis wrote to Happel informing him that she spoke to HR regarding his racist remarks, and the inappropriate conversation regarding Hilde Hayes.

15. Artis told Happel and Clark that she will not tolerate discriminatory comments or the unfair treatment she receives from them compared to other non-black supervisors.

16. Finally, on July 12, 2017 a Notice was sent to HR's Senior Vice President to respond to Mrs. Artis' complaints of discrimination.

17. On October 11, 2017 at 2:17 pm in an email addressed to the Director and Legal Analyst of CCH labor relations Nancy McGuire, Mrs. Artis requested that HR send a representative to meetings where Happel and Clark would be present at meetings where Mrs. Artis was present, but no representative was provided for ongoing meetings.

18. Shortly after formally complaining about Happel's racist remarks, at or around Oct. 12, 2017, 2017 CCH pulled back from restructuring Mrs. Artis hours after she informed Nancy McGuire that not only will she be filing the racial discrimination charge but also retaliation as well.

19. At that meeting , Mrs. Artis informed Nancy McGuire , "As a person of color, I informed you in past meetings: July 25, and on Oct. 13, 2017, you cannot tell me what it feels like to be racially discriminated against as a Black woman; No different-then I could tell you what it would feel like if you were present amongst a number of Blacks, being racially discriminating to you. However, you informed me on Oct. 13, that you know what it feels like to be a Black woman of color being racially discriminated?"

20. On July 19 at 9am, Mrs. Artis met with Nancy McGuire, for one hour. This was the first meeting held to inquire as to the status of an investigation of Mr.Happel being conducted for his racial comments and unethical behavior.

21. On July 25, Mrs.McGuire met with Mrs.Artis at 1pm-3:320pm and urged Mrs. Artis not to bring witnesses forward regarding Mr.Happel, apologizing for the untimeliness in

investigating the incident. Then Mrs. McGuire began to make offers of money to Mrs. Artis On July 25th, 2017.

22. . At this point, Mr.Happel began warning staff members to use caution with words of race/color while Mrs.Artis was present and within earshot.

23. Mrs. Artis ideal hourly scheduling is 7am-3pm. Happel tried to impose a new schedule and time of 5am-1pm on Mrs. Artis when she clearly made her availability clear when negotiating her job with Cape Cod Hospital.

24. 2-months went by with no word from Sarah O'Reily, HR Manager. Finally Mrs. Artis went to the EEOC for direction. She was informed to send a letter of the discriminating acts to Happel, and to the Head of HR regarding the racial remarks.

25. Mrs. Artis filed a discrimination charge at the EEOC on October 17, 2017.

26. Approximately October 25, 2017 Mrs. Artis met with Nancy McGuire again to inquire as to the status of an investigation of Happel.

27. It was Mrs. Artis' understanding that Sarah O'Reilly in HR would begin an investigation into Happel's racial discrimination, beginning (1) month after the meeting where Happel made the racial remarks.

28. On November 7, 2017 at 11am during another supervisors meeting, Happel stated "a color, I shall not name [then Happel paused to look directly at Mrs. Artis] with present company in the room with us."

29. Everyone in the room laughed, while Mrs. Artis, the only Black employee present, was humiliated and alienated because it was obvious the color Happel was referring to was black.

30. Nancy McGuire of CCH said she "knows how you feel" to Mrs. Artis. Mrs. McGuire is not Black, so how could she feel like a woman of color?

31. On January 9, 2018, Mrs. Artis was singled out and brought to Happel's office regarding a comment that Gloria and a white supervisor questioned at a meeting, on how to proceed in the employee parking lot when cones are not present. The white Supervisor that had the same question was not brought in to be questioned whether they were on board with management.

32. On January 11, 2018 Jennifer Clark, Lab manager, sent Mrs. Artis a threatening letter, with demands telling Mrs. Artis to change a white employee's evaluation and scores to the liking and findings per her expectations.

33. On Jan. 25, 2018 at 2pm Mrs. Artis informed Clark that she their is documentation that proves that Clark attempted to falsify documents on December 30, 2018, and then Clark nearly slammed Gloria's face and feet with a door.

34. On February 21, 2018, shortly after CCH received a Request from Mrs. Artis' Counsel for Artis' personnel record, Artis received a final written warning.

35. On February 26, 2018 Mrs. Artis observed that the Caucasian supervisors broke protocol and were late sending staffing reports by eight-months, were not disciplined yet, but Mrs. Artis was reprimanded for far less.

36. Patrick O'Donell went out on FMLA, and informed two Caucasian supervisors Jim Harrington & Phyllis Smith on Friday March 16, 2018 that he would be out until the end of March for FMLA.

37. Neither supervisor updated this information in the employee's data base for assignment. When Mrs. Artis came on to complete scheduling she was not informed that O'Donnell

would be out. Artis made sure to call O'Donnell directly to confirm he was out, and had Artis not gone above and beyond she probably would have been fired.

38. March 21, 2017, Hilda Hayes, African-American Union Delegate gave a statement regarding her witnessing of the unfair treatment towards at African-American employees at CCH.

39. Hilda had discovered CCH violated privacy looking into employee emails and reprimanding them for writing down evidence of the unfair treatment they see towards their Black supervisors.

40. HR met with three employees trying to intimidate them calling and setting up meetings. When the employees asked how did you (HR) come about my personal Documents that they deleted out of their emails, Sarah Piccone director of HR, stated "I cannot reveal my source."

41. The Grievance dated March 2, 2018 was a fabrication and was rescinded. Employee Mary Carey, felt coerced by management Jennifer Clark, Jim Harrington, and Phyllis Smith to cause a problem for Mrs. Artis.

42. Other employees that observed the account are Joana Oliveira, Shani Turner and Mary Carey can account for the falsity by the two Caucasian supervisors and Jen Clark.

43. On March 20, 2018 the two supervisors waited for Mrs. Artis' turn in scheduled bench assignments to set up Artis so that No coverage for Overnights at CCH hospital would occur.

44. CCH tried to force Mary Cary, an employee at CCH, to make a grievance against Artis, in violation of the collective bargaining agreement. CCH wanted Cary to make a

grievance against Artis that Artis needed different hours. Cary refused to do it. The grievance was in pre-grievance status at meeting for March 7, 2018.

45. Cape Cod hospital is not a diversified environment. Upper management/leadership team- there are not many person(s) of color. CCH is slow in correcting problems of racial conflict.

## Count I – Discrimination based on Race in Violation of Federal Law

46. The Plaintiff restates all prior paragraphs as if stated fully herein.
47. The defendant did, through the facts stated herein, violate Civil Rights Act of 1964 42 U.S.C. §2000 et seq (as amended 1972)("Title VII").
48. As a result, the plaintiff did suffer and continues to suffer damages.

## Count II – Discrimination based on Sex and Gender in Violation of Federal Law

49. The Plaintiff restates all prior paragraphs as if stated fully herein.
50. The defendant did, through the facts stated herein, violate Civil Rights Act of 1964 42 U.S.C. §2000 et seq (as amended 1972)("Title VII").
51. As a result, the plaintiff did suffer and continues to suffer damages.

## Count III – Retaliation in Violation of Title VII

52. The Plaintiff restates all prior paragraphs as if stated fully herein.
53. The plaintiff did, through the facts stated herein, engage in a protected activity under the Civil Rights Act of 1964 42 U.S.C. §2000 et seq (as amended 1972)("Title VII") when

she filed a Complaint at the Massachusetts Commission Against Discrimination where she believed she was the victim of discrimination.

54. The defendant did, through the facts stated herein, violate Civil Rights Act of 1964 42 U.S.C. §2000 et seq. (as amended 1972)("Title VII") by retaliating against the plaintiff because of her protected activities and subjecting her to adverse, material changes in the condition(s) of her employment because of her protected activities.

55. As a result, the plaintiff did suffer and continues to suffer damages.

## Count IV:  Discrimination Based on Sex and Gender In Violation Massachusetts General Laws Chapter 151B

56. The Plaintiff restates all prior paragraphs as if stated fully herein.

57. The Defendant did create, maintain, and fail to prevent an environment in which Mrs. Artis was subjected to offensive, unwanted conduct on the basis of her sex and/or gender which was so severe and pervasive that it materially altered her conditions of employment.

58. As a result, Mrs. Artis suffered and continues to suffer damages, has experienced and continues to experience physical and emotional injuries as a result of CCH comments and behavior, and is therefore entitled to compensation.

## Count V: Discrimination Based on Sex and Gender In Violation Massachusetts General Laws Chapter 151B

59. The Plaintiff restates all prior paragraphs as if stated fully herein.

60. The Defendant did create, maintain, and fail to prevent an environment in which Mrs. Artis was subjected to offensive, unwanted conduct on the basis of her sex and/or gender which was so severe and pervasive that it materially altered her conditions of employment.

61. As a result, Mrs. Artis suffered and continues to suffer damages, has experienced and continues to experience physical and emotional injuries as a result of CCH comments and behavior, and is therefore entitled to compensation

## Count VI - Retaliation Massachusetts General Laws Chapter 151B

62. The Plaintiff restates all prior paragraphs as if fully stated herein.

63. Mrs. Artis did file a complaint with Defendant's human resources department in an effort to oppose and stop the harassment Mrs. Artis was subjected to by CCH.

64. The next day that Artis worked following her filing of a complaint with Defendant's human resources department she was immediately given a warning.

65. Artis opposed the working conditions she was subjected to, and was in turn subjected to an adverse employment action by the Defendant for opposing the inappropriate behavior of her superiors.

**Damages**

Wherefore, Plaintiff is entitled to compensation in the form of front pay and back pay as well as compensation for her emotional distress and compensation for her costs and attorney's fees in addition to any other relief deemed by this court to be reasonable and just.

*Plaintiff demands a trial by jury on all issues so triable*.

Respectfully submitted by counsel,

/s/ Simon B. Mann

Simon B. Mann
BBO 665301
Mann Law Firm, PC
1071 Worcester Road, Suite 42
Framingham, MA 01701
508-270-0500
508-270-0515
simon@sbmannlaw.com

**CERTIFICATE OF SERVICE**

**I,** Simon B. Mann, hereby certify that on this 18th day of May, 2018, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be delivered via first class mail to those indicated as non-registered participants.

/s/ *Simon B. Mann*
Simon B. Mann